Mary C. QUARATINO, Plaintiff–
Appellant,

v.

TIFFANY & CO., Michael Eiring, and
David Wright, Defendants–
Appellees.

No. 1619, Docket 94–9268.

United States Court of Appeals,
Second Circuit.

Argued May 5, 1995.

Decided Nov. 20, 1995.

Anne Golden, New York City, for Plaintiff–Appellant.

Louis R. Satriale, Jr., New York City (Daniel A. Rizzi, Jason P. Isralowitz, Townley & Updike, New York, New York, of counsel), for Defendants–Appellees.

Before CARDAMONE, MINER, and JACOBS, Circuit Judges.

CARDAMONE, Circuit Judge:

We have before us an employment discrimination case based on pregnancy. Plaintiff alleges that her termination from employment in 1992 at the end of her maternity disability leave was discrimination in violation of Title VII's Pregnancy Discrimination Act contained in the Civil Rights Act of 1964. Her employer, the defendants, say that plaintiff's discharge came about as a result of a corporate restructuring, which eliminated a number of positions, including plaintiff's, after the net income of its business declined five million dollars in fiscal year 1991 (ending January 31, 1992) from the prior year.

Plaintiff asserts that her employer apparently believes an employee who takes a maternity leave is on a track that puts her career second to her responsibilities as a mother. No studies or testimony in the record support the view that pregnancy is incompatible with professional ambitions; and, that belief may be more a reflection of an individual employer's attitude than objective reality. Whether or not it has any validity is not our task to decide because Congress,

whose view is the one we must heed, has expressly stated in Title VII that pregnant women shall be treated equally for all employment related purposes and that nothing in the law shall be construed to permit otherwise.

Plaintiff Mary C. Quaratino appeals from a grant of summary judgment in favor of defendants Tiffany & Co. (Tiffany), Michael Eiring, and David Wright in her action alleging pregnancy discrimination and from a denial of her motion to file a supplemental complaint to add a new cause of action against the same defendants alleging unlawful retaliation. Judgment was entered November 22, 1994 in the United States District Court for the Southern District of New York (Martin, J.). Defendant Wright was plaintiff's immediate supervisor; he reported to defendant Eiring, who was Tiffany's vice president of corporate operations. Plaintiff held the post of manager of corporate sales support and administration until her position was terminated at the conclusion of her maternity leave. She was later rehired as a showroom coordinator, a position she currently holds.

The issues presented are whether the trial court properly dismissed plaintiff's complaint alleging employment discrimination in violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), contained in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1988), as amended by the Civil Rights Act of 1991, and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. (McKinney 1993), and properly denied her motion to file a supplemental complaint. Defendants contend there are no genuine issues of material fact regarding plaintiff's claim of pregnancy discrimination because her job was eliminated as part of a department-wide reorganization and that the motion to file a supplemental complaint was properly denied because plaintiff was rehired to a position newly-created for her.

## BACKGROUND

Mary Quaratino began her employment with Tiffany & Co., Manhattan's world famous Fifth Avenue jewelry store, in 1984 as a second assistant account executive in the operations department, having been previously employed by J.C. Penney & Co. where she performed inventory functions. By 1991 she had been promoted several times and had attained the position of manager of corporate sales support and administration at an annual salary of $39,398.90. In January 1991 Quaratino discovered she was pregnant and was due to give birth in October; she did not tell anyone at work of her condition.

Four months later, in April 1991, defendant Wright, Quaratino's immediate supervisor, gave her a favorable evaluation on her annual performance report and expressed no criticisms of her except he thought she should be more punctual. During plaintiff's evaluation, Wright told her that he had asked her co-worker Shelley Rajman and now was asking her, "Are you really serious about your career, or are you just going to go home and get pregnant?" Plaintiff chose not to confide in Wright that she was pregnant. Instead, she said, "David, I'm *very* serious about my career." Quaratino compared notes with Rajman—the only other married woman in the department—who reported that Wright had asked her the same question. When Rajman and Quaratino both inquired of Denise Felder, a manager, whether she had been asked about her maternal aspirations she said, "No. Probably because I'm 40 and past my prime."

In late May 1991, on the Memorial Day weekend, plaintiff told James E. Quinn, Tiffany's executive vice president, that she was pregnant. She then informed Wright of her condition. His immediate response to this news was an expletive and he avoided her throughout the following week. At a subsequent staff meeting, when Wright announced the "wonderful" news that plaintiff was going to have a baby, she did not believe his "comment" was genuine. Quaratino further asserts that after Wright learned of her pregnancy, he became highly critical of her, continuing not only to avoid her, but also acting unfriendly even when he had to speak to her. In July 1991 he sent plaintiff a memo accusing her of "consistently poor performance with regard to tardiness" and threatening "more serious action." When Quaratino requested specific examples of tardiness,

Wright described six alleged episodes. Plaintiff insists all but one of them were based on inaccurate information and that she pointed this out to him in a memo, to which he never responded.

A few months before plaintiff took maternity leave, her responsibilities were expanded to include the planning and organization for a move of the sales staff from Fifth Avenue to 600 Madison Avenue. Defendants described this move as the "reorganization" in which plaintiff's job—or, as plaintiff believes, her job title—was eliminated.

In another conversation that took place prior to Quaratino's maternity leave, defendant Eiring told plaintiff not to worry and that her job in the corporate department would be waiting when she returned. At the same time he took occasion to express his view that a mother should stay home with her child, and explained how his wife had quit working and stayed home with their child. Plaintiff explained to him that she was in favor of a mother remaining at home with her baby, but that her financial circumstances did not afford her that luxury; she told defendant Eiring that she had to work in order to care for her child.

Due to complications with the pregnancy, Quaratino left her employment on September 18, 1991, about ten days earlier than planned. On October 18, 1991 her baby was born. During her leave, Quaratino communicated on a regular basis with her employer. Defendants allege that while plaintiff was out, the operations department to which she reported underwent a reorganization due to the relocation of the sales force and the moving of inventory to Madison Avenue. The sales department was closely connected with the operations department, which provided it with both operational and logistical support.

Defendants assert the restructuring eliminated three manager positions in plaintiff's department: plaintiff's manager position was eliminated and her responsibilities plus other inventory functions were combined to create a new, higher level managerial job. Manager positions held by Donald Salvato and Shelley Rajman were also allegedly eliminated. Quaratino declares, to the contrary, that her employer did not eliminate three department managers; that is, Salvato, was not a manager but a supervisor who remained at Tiffany. Nor was Rajman's job eliminated. Rajman testified her position was demoted from manager to supervisor. Thus, facts regarding how the reorganization was accomplished are in dispute, particularly whether Ms. Quaratino was the only person terminated since both Salvato and Rajman remained employed at Tiffany.

In January 1992 Quaratino contacted the human resources department to advise that she would be returning to work at the end of the month. She asked where to report as she had heard that Mary Anne Jackson was using her office. She was told to speak with the director of human resources, who in turn told her to speak with defendant Eiring. But he never returned her calls. Instead, on January 30, 1992, plaintiff was notified by mail that she had been discharged.

Only after Wright's deposition did plaintiff learn that he had interviewed Mary Anne Jackson—a single woman without children—at about the time he learned plaintiff was pregnant and before she had gone on maternity leave, even though he conceded that there was then no vacancy. Wright admitted that Jackson received an offer for a permanent job. Eiring also admitted that he began discussing replacing plaintiff three months before she left on maternity leave.

Plaintiff maintains that she was not the only person who became pregnant and later faced difficulties at Tiffany's. When Elizabeth McGehee, one of Quaratino's subordinates, was out on maternity leave Wright ordered plaintiff to replace her. Quaratino refused, managing to save McGehee's position. Additionally, Eiring admitted in a deposition that Dawn Vaninchek and Linda Graham—both operations employees who had children—did not return after maternity leave to the same positions they had previously held. Although Tiffany's in-house counsel asserted in an affidavit that Ms. Graham had returned to the same level job, he confirmed that Ms. Vaninchek returned to a lower level position.

Quaratino was given a formal interview and then she too was offered a lower position

as a showroom coordinator, two levels below her previous position. Although plaintiff accepted this offer on April 27, 1992, she did lose former stock options, a week of paid vacation, pension credits, as well as salary. Defendants aver they generously "created" the showroom coordinator position specifically for Quaratino and that they did everything they could to ensure that she would be paid at a level comparable to her former post. In that connection, they note that after plaintiff received a raise in April 1993 she was earning the same amount she would have made had her former job not been eliminated because salaries for manager positions had been frozen. In response to the statement that a job was specially "created" for her, plaintiff observes she was required to go through a formal application and interviewing process before being offered the lower ranked position. Requiring her to do this she thinks casts considerable doubt on the notion that the job was tailor-made specifically for her.

Plaintiff offers in addition a recitation of subsequent events that revealed Tiffany's reluctance to reinstate her to her previous position. When Jackson, who replaced Quaratino, resigned, plaintiff contacted human resources to inquire about the availability of her former position. She was told that Tiffany was not going to fill it. She also telephoned human resources periodically and was told there was no position available for her.

As a result, Quaratino filed a charge of pregnancy discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) on May 22, 1992. Two months later Tiffany announced that Jackson's former position would be filled effective August 1, 1992 by Denise Felder, an unmarried woman. The position was given a new title but plaintiff insists it was the same job she performed before maternity leave, with the additional responsibility of stockroom inventory control. Later, Eiring testified that the inventory function took up 50 percent of the new job. Plaintiff comments that ironically, in June of 1992, she was asked to help with inventory, even though it was not part of her showroom coordinator duties. Further, plaintiff was

neither informed about the decision to fill her former position, nor asked whether she wanted to be considered for it.

In November 1993, when Felder left, plaintiff informed the director of corporate operations that she wanted to be considered for the opening. In March 1994, Eva Samaan, who had no children, was appointed to the position with a salary of $56,444 per year. Plaintiff, who has observed the duties of Ms. Felder and Ms. Samaan, declared in an affidavit opposing defendants' summary judgment motion, that except for the inventory function, their responsibilities were the same as hers had been in 1991, and that she had previously performed similar inventory functions satisfactorily.

Plaintiff requested and received a Notice of Right to Sue letter dated January 15, 1993 from the EEOC. On April 1, 1993, she brought the instant action. The district court granted defendants' motion for summary judgment, holding that Quaratino had failed to establish a *prima facie* case, and denied plaintiff's motion to add a cause of action alleging retaliatory discharge. This appeal followed.

## DISCUSSION

■ Quaratino brought this action against Tiffany, Eiring, and Wright for allegedly discriminating against her under the Pregnancy Discrimination Act. 42 U.S.C. § 2000e(k). The Act states that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2(h) of this title shall be interpreted to permit otherwise." *Id.* The New York State Human Rights Law provides the same sort of protection. *See* N.Y. Exec. Law § 296(1)(a) (McKinney 1993). The language of Title VII reveals Congress' intent to assure equality of employment opportunities and to eliminate discriminatory practices on the basis of race or any other impermissible classifications. *See McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 800–01, 93 S.Ct. 1817, 1823–24, 36 L.Ed.2d 668 (1973).

The plaintiff has the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her on account of her pregnancy. *See Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir. 1994). Because Quaratino alleges discriminatory treatment in a Title VII case, the three-step burden shifting analysis enunciated in *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1824–25; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, ——–——, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993), applies.

First, the plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. A plaintiff can establish a *prima facie* case of pregnancy discrimination under Title VII by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94. Alternatively, a plaintiff may satisfy the fourth requirement to make out a *prima facie* case by showing that the discharge occurred in circumstances giving rise to an inference of unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802, n. 13, 93 S.Ct. at 1824 n. 13; *Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100, 104 (2d Cir.1989).

Second, assuming the plaintiff demonstrates a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory reason for discharging the employee. *See Gallo*, 22 F.3d at 1226. Third, if the defendant satisfies this burden of production, the plaintiff has the ultimate burden to prove that the employer's reason was merely a pretext for pregnancy discrimination. An employer's reason for termination cannot be proven to be a pretext for discrimination unless it is shown to be false *and* that discrimination was the real reason. *Hicks*, —— U.S. at ——, 113 S.Ct. at 2752.

Because the district court ruled that plaintiff did not meet her burden of establishing a *prima facie* case of pregnancy discrimination, discussion is confined to that issue.

### I  Proof of *Prima Facie* Case

Both parties agree that Quaratino satisfied the first three elements of a *prima facie* case. She was within the protected class, her job performance had been satisfactory, and despite her qualifications, she was subjected to an adverse employment decision. *See Gallo*, 22 F.3d at 1224. At dispute is the fourth element, whether plaintiff proved that her position remained open or whether her discharge from employment in January 1992 occurred under circumstances giving rise to an inference of unlawful discrimination.

A plaintiff's burden to establish a *prima facie* case of discrimination "is not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094; *Gallo*, 22 F.3d at 1225. Direct evidence is not necessary. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1187 (2d Cir.), *cert. denied*, 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A plaintiff may prevail if she submits enough believable evidence for a jury to find that an adverse employment decision resulted because of discrimination. *Id.* Defendants specifically contend that Quaratino presented no evidence to support her assertion that her former position remained open. They assert that when plaintiff was on maternity leave, her job was eliminated due to a department-wide reorganization and was combined into a higher level managerial position.

In deciding a motion for summary judgment, when confronted with facts from which several differing conclusions may be drawn, the inferences drawn from such underlying facts are viewed in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993); *see also* Fed.R.Civ.P.

56(c). Here, the district court apparently relied upon defendants' proof and adopted its justification for discharging the plaintiff. Thus, in granting defendants' motion, it determined that "the yearly salary for the Manager, New York Operations position is over $50,000, while plaintiff's former job had a salary of $40,000 . . . [and] [t]hat the Manager, New York Operations job has a substantial additional task and a higher salary level indicates that plaintiff's job was indeed eliminated."

This determination that the managerial position, by having a higher salary level and an inventory function, was actually a new position, was a finding of fact which plaintiff disputes. As earlier noted, plaintiff insists this is the same job she held before her maternity leave, with only one inconsequential change. Employers have the right to restructure jobs and job responsibilities, but they cannot use that process to implement discriminatory objectives. An employee may always show that her employer's decisions on restructuring—as applied to her—were made to displace her for impermissible reasons such as taking maternity leave. Whether the former position remained open or had been eliminated presented a question of fact that should have been determined by a jury, not by the trial court judge. The district court's function is to decide whether any factual issues exist that would warrant a trial, not to resolve them in favor of either party. *See Gallo*, 22 F.3d at 1224 ("[T]rial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.").

Plaintiff identified, in addition, numerous material disputed facts. For example, her former position was filled (in order) by Mary Anne Jackson, Denise Felder, and Eva Samaan; all were unmarried women, none were pregnant. Her new position was essentially the same one she had performed, absent the inventory function, before her maternity leave; she had considerable experience in inventory control at her prior job at J.C. Penney and had been called on to do inventory work at Tiffany, all of which had been performed in a satisfactory manner. Both

Salvato, a male, and Rajman, a non-pregnant female, whose managerial jobs were allegedly eliminated, remained at Tiffany while plaintiff was discharged. There was also evidence concerning Tiffany's discriminatory animus: defendant Wright's behavior when Quaratino first informed him of her pregnancy; Wright's questions to Quaratino and Rajman before he was aware of plaintiff's pregnancy; Felder's response that Wright didn't ask her the same question because she was past her prime; Wright's change in attitude toward plaintiff; Eiring's suggestion that she not return to work because a mother should stay home with her child; the refusal to give her back her former position when she was ready to return, and on two subsequent occasions, when the post was vacant; and defendant Wright's and defendant Eiring's actions with respect to other women who took maternity leaves and returned to lower level positions. Perhaps most significant was Wright's interviewing (before plaintiff left on maternity leave) of a non-pregnant woman for plaintiff's job on a permanent basis and Eiring's admission that discussions regarding replacing plaintiff—then five months pregnant—took place three months before she went on maternity leave.

Since plaintiff's burden of proof in a pregnancy discrimination action is *de minimis* at the *prima facie* stage, and because we must view all of these mostly disputed facts most favorably to the plaintiff, Quaratino's evidence was sufficient to support a *prima facie* case showing that either her position remained open and was filled by a non-pregnant female or that she was terminated under circumstances giving rise to an inference of unlawful pregnancy discrimination.

## II  Supplemental Complaint

Defendants further argue that the district court properly exercised its discretion in denying Quaratino's motion to file a supplemental complaint. They assert Quaratino's motion was properly rejected on grounds of futility because no evidence supported the proposed supplemental complaint alleging she was retaliated against by being passed over for consideration when the manager of operations position was available.

Fed.R.Civ.P. 15(d) permits a party to move to serve a supplemental pleading and the district court may grant such a motion, in the exercise of its discretion, upon reasonable notice and upon such terms as may be just. Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Again, leave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading. *See Bornholdt v. Brady,* 869 F.2d 57, 68 (2d Cir.1989); *LaSalvia v. United Dairymen,* 804 F.2d 1113, 1119 (9th Cir. 1986), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987). Leave is normally granted, especially when the opposing party is not prejudiced by the supplemental pleading. *See Bornholdt,* 869 F.2d at 68; *LaSalvia,* 804 F.2d at 1119.

In the instant case plaintiff offered factual support related to the original complaint. Were the motion to be granted, no prejudice to defendants is apparent. Quaratino wanted to add a cause of action alleging she had been unlawfully retaliated against for having filed a charge of discrimination with the EEOC. Plaintiff alleged that Mary Anne Jackson, who replaced plaintiff while she was out on maternity leave, resigned, and when plaintiff heard about it she applied for the position in February 1992. Plaintiff filed her discrimination charge with the EEOC three months later in May 1992. Jackson's job was filled August 1, 1992 by Denise Felder, who had been on an equal level with plaintiff in 1991. When Felder left what plaintiff claims is her former job in November 1993, plaintiff again applied for the position.

Meanwhile, in January 1993 plaintiff received a right to sue letter from the EEOC. Tiffany received a copy of this letter. In March of 1994, one year and two months after Tiffany learned plaintiff had received a right to sue letter, the position was filled by Eva Samaan. Plaintiff declares that the position taken by Jackson, Felder and Samaan is her old job.

The district court decided that the position at the root of this litigation was not the "same" as plaintiff's former job. Hence, plaintiff's assertion of qualifications equal to those of the persons who filled it was not sufficient to establish a *prima facie* case of retaliation. Given our earlier discussion demonstrating the factual nature of that conclusion, it was an abuse of the district court's discretion for it to deny plaintiff's motion for leave to file a supplemental complaint alleging an additional cause of action for unlawful retaliation.

## CONCLUSION

Accordingly, the judgment appealed from is reversed and the case is remanded for further proceedings consistent with this opinion.