715 So.2d 1235 (1998)
Fred GREER, et al., PlaintiffsAppellants,
v.
DRESSER INDUSTRIES, INC., et al., DefendantsAppellees.
No. 98-129.
Court of Appeal of Louisiana, Third Circuit.
July 1, 1998.
*1236 Robert Bruce Macmurdo, Baton Rouge, for Fred Greer, et al.
Fraser A. McAlpine, Houston, TX, for Dresser Industries, Inc., et al.
Ronald J. Fiorenza, Alexandria, for Gail McDavid, et al.
Before YELVERTON, GREMILLION and PICKETT, JJ.
YELVERTON, Judge.
This is an appeal brought by eight age discrimination plaintiffs from a summary judgment rendered in favor of their former employer, Dresser Industries, Inc., and several of Dresser's decision makers. Dresser is an international corporation with offices in the United States and England. The plaintiffs[1] in these two consolidated cases[2] were all employees of Dresser's Pineville, Louisiana facility, which manufactures and sells industrial valves used in chemical and petroleum processing.
With its economic projections for 1994 showing lower profits, Dresser made a decision to cut overhead expenditures at the Pineville facility. John Cooper, the general manager of the Pineville facility, was instructed to implement a plan to cut costs, and he determined that a reduction in force was necessary. Cooper enlisted the aid of James Riegler, the human relations manager, for that purpose.
As to each department, Riegler determined the number of potential cuts that would be required. He then involved department managers for a determination of which jobs should be eliminated. One of those managers was Gail McDavid, who managed operations. Cooper, Riegler, and McDavid were all named as defendants in this suit, along with Dresser.
During 1993 and 1994, Dresser implemented the reduction in force (RIF) plan. The plaintiffs lost their jobs. Following their termination from Dresser, the plaintiffs filed suit alleging that Dresser and its decision makers (referred to collectively hereafter sometimes as Dresser) discriminated against the plaintiffs on the basis of their age while implementing the RIF. Dresser filed motions for summary judgment against the individual plaintiffs, and the trial court granted summary judgment in favor of all defendants. The trial court did not give written reasons for judgment, but implicit in its short oral reasons was a finding that the RIF was a legitimate, nondiscriminatory reason for the plaintiffs' terminations, that there were no genuine issues of material fact, that the *1237 defendants did not discriminate as to age, and that the defendants were entitled to judgment as a matter of law. We reverse and remand.

LAW

Summary Judgment
We review summary judgments de novo. Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94); 639 So.2d 730. In Taylor v. Oakbourne Country Club, 95-388 (La.App. 3 Cir. 10/4/95); 663 So.2d 379, we considered the parties' burdens of proof in age discrimination cases at the summary judgment level. Our reversal in that case relied heavily on a United States Fifth Circuit opinion in Thornbrough v. Columbus and Greenville R. Co., 760 F.2d 633 (5 Cir.1985).
The plaintiffs' argument in the present case rests extensively on our opinion in Taylor and on the Fifth Circuit's opinion in the Thornbrough case. We recognize that these reviews employed summary judgment rules that looked indulgently upon the claims of the party opposing the motion, i.e., summary judgment was not favored; and that those views must yield to two subsequent events: 1) the United States Supreme Court's opinion in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), which interpreted federal summary judgments as being favored, and 2) our legislature's adoption of that standard in the recently amended La.Code Civ.P. art. 966, as stated in Section 4 of Acts 1997, No. 483. Article 966 now declares, in pertinent part, that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." Because age discrimination is not one of those actions disallowed by La.Code Civ.P. art. 969, Article 966 requires us to treat summary judgment in such cases as in every other case-i.e., with favor. Nevertheless, as we will further explain later, there are special rules of proof that the federal courts have fashioned to ease the evidentiary burdens on employment discrimination plaintiffs, and these rules are unaffected by the change in philosophy of summary judgment procedure.
Moreover, it is still the law that a motion for summary judgment is not a substitute for a trial on the merits and is usually inappropriate in cases requiring a judicial determination of subjective facts, such as motive, intent, good faith, or knowledge. Douglass v. Alton Ochsner Med. Found., 97-25 (La.App 5 Cir. 5/28/97); 696 So.2d 136; Bilbo for Basnaw v. Shelter Ins. Co., 96-1476 (La.App. 1 Cir. 7/30/97); 698 So.2d 691, writ denied, 97-2198 (La.11/21/97); 703 So.2d 1312. In Hazen Paper Co. v. Biggins, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the United States Supreme Court held that in an age discrimination suit, the ultimate fact that an employee must prove is that age was a motivating factor in the employer's decision to terminate the employee's employment. That being so, unless the evidence shows us that there are no genuine issues of material fact without our inquiry into the employer's motive, the summary judgment was inappropriate.
Further, it must be kept in mind that the "burden of proof remains with the movant." Article 966(C)(2). Dresser had the initial burden of showing that there was an "absence of factual support for one or more elements essential to" the plaintiffs' claims. Id. Only after that initial burden is satisfied will we inquire into whether the plaintiffs have produced "factual support sufficient to establish that [they] will be able to satisfy [their] evidentiary burden of proof at trial." Id. We will now review the elements of an age discrimination case to determine what the plaintiffs must prove at a trial on the merits and whether Dresser has shown an absence of factual support for one or more of the essential elements.

Louisiana's Age Discrimination Law
The law under which the plaintiffs brought their suit is the Louisiana Age Discrimination in Employment Act (LADEA) as contained in La.R.S. 23:971 et seq.[3] Louisiana's prohibition *1238 against age discrimination is virtually identical to that under federal law, and so we have used federal jurisprudence for guidance in the interpretation of the LADEA. Taylor, 663 So.2d 379. A plaintiff can rarely produce direct evidence of discrimination and, so, to ease the evidentiary burden the courts have fashioned a special framework of proof for employment discrimination cases. Thornbrough, 760 F.2d at 638. In Rhodes v. Guiberson Oil Tools, 75 F.3d 989 (5 Cir.1996), the court discussed the evidentiary framework of an age discrimination case. We quote from Rhodes, 75 F.3d at 992-993 (footnote omitted):
To establish a prima facie case of age discrimination, the plaintiff "must demonstrate that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 (5th Cir.1993).
Under the Supreme Court's McDonnell Douglas-Burdine framework, the plaintiff first must establish a prima facie case by a preponderance of the evidence; once established, the prima facie case raises an inference of unlawful discrimination. See Hicks at 506, 113 S.Ct. at 2747; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The burden of production then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the challenged employment action. Hicks, 509 U.S. at 506, 113 S.Ct. at 2747; Burdine, 450 U.S. at 253, 101 S.Ct. at 1093; McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. The defendant may meet this burden by presenting evidence that, "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." Hicks, 509 U.S. at 507, 113 S.Ct. at 2747. If the defendant meets its burden, the presumption raised by the plaintiff's prima facie case disappears. Burdine, 450 U.S. at 255 & n. 10, 101 S.Ct. at 1094 & n. 10. However, the plaintiff is accorded the opportunity to demonstrate that the defendant's articulated rationale was merely a pretext for discrimination. See Hicks, 509 U.S. at 506-08, 113 S.Ct. at 2747-48; Burdine, 450 U.S. at 253, 101 S.Ct. at 1093; McDonnell Douglas, 411 U.S. at 804-05, 93 S.Ct. at 1825.
The court further stated that:
To sustain a finding of discrimination, circumstantial evidence must be such as to allow a rational factfinder to make a reasonable inference that age was a determinative reason for the employment decision. The factfinder may rely on all the evidence in the record to draw this inference of discrimination. In tandem with a prima facie case, the evidence allowing rejection of the employer's proffered reasons will often, perhaps usually, permit a finding of discrimination without additional evidence. Thus, a jury issue will be presented and a plaintiff can avoid summary judgment and judgment as a matter of law if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains. The employer, of course, will be entitled to summary judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for the discharge was discriminatory.
Id. at 994.
It was also recognized in E.E.O.C. v. Texas Instruments Inc., 100 F.3d 1173, 1181 (5 Cir.1996), that in RIF cases there is "another wrinkle on the standards for evaluating discrimination." That court stated:
In the context of a reduction in force, which is itself a legitimate, nondiscriminatory reason for discharge, the fact that an employee is qualified for his job is less relevantsome employees may have to be let go despite competent performance. If, however, the older employee shows that he was terminated in favor of younger, clearly *1239 less qualified individuals, a genuine, material fact issue exists.
Id. at 1181 (citation omitted).
In a RIF case, therefore, there is a legitimate nondiscriminatory reason for the discharge, and the real question is whether in making the decision to lay off a particular employee, age was also a motivating factor. A genuine, material fact issue that pretext exists can be raised by a showing that the older employee was terminated while a younger, clearly less qualified, individual was retained. However, that is not the only way of showing pretext. The employee can offer other evidence to raise a genuine, material fact issue of pretext depending on the employer's stated reasons for dismissing the employee.
Thus, in a RIF case, since the employer's reason for the discharge is presumed to be legitimate and nondiscriminatory, we interpret the statutory and jurisprudential law as stating that the elements of an age discrimination case that must be proven by a plaintiff are:
1) He or she was discharged.
2) He or she was qualified for the position.
3) On the date of termination he or she was in the group of employees protected by the LADEA-i.e., between the ages 40 and 70.[4]
4) Age was a motivating factor in the employer's decision to discharge him or her.
If the summary judgment evidence contains genuine issues of material fact as to any of those elements not established in plaintiff's favor, then, while a fact finder may ultimately conclude that the plaintiff has not been discriminated against based on age, the case is nonetheless not one that can be adjudicated by summary judgment because there is not an "absence" of factual support for at least one of the essential elements of the plaintiffs' claims.

OPINION
In this case the evidence shows that the plaintiffs were all discharged and were of the age protected by the LADEA. Because Dresser states its reason for discharging the plaintiffs as being a RIF and not for insufficiency of qualifications, there is no dispute that the plaintiffs were well qualified for their jobs. The only element seriously disputed by Dresser is the fourth one, and based on the evidence, we find that Dresser failed to meet its burden at the summary judgment stage-i.e., showing an absence of factual support for the plaintiffs' claims that age was a motivating factor in its decision to terminate the plaintiffs.
All of the plaintiffs put forth significant affidavit and deposition testimony suggesting that their positions were not merely terminated, but on the contrary, that through shifts in personnel they had been replaced by younger employees, or that younger employees performing virtually the same jobs were retained despite the fact that they were clearly less qualified for the positions of the plaintiffs. Dresser rebutted the plaintiffs' evidence by introducing its own affidavit and deposition testimony and statistics showing a higher aged workforce after the RIF. But its evidence at this stage does not rise to the level of rendering the absence of pretext certain or making it unreasonable to infer that age was a motivating factor in the employment decision. The evidence taken as a whole creates in our minds genuine issues of material fact regarding pretext, which would be better left for a fact finder's determination of credibility and weighing of evidence.
Dresser contends that its RIF plan was objective and designed to eliminate surplus or redundant jobs and not people. The plaintiffs contend that their jobs were redistributed to other, younger, less-qualified employees after they were laid off. There is summary judgment evidence to support this contention. The deposition of its human relations manager, James Reigler, shows there was nothing in writing governing Dresser's approach to job elimination. Therefore, to *1240 the extent that the stated reasons for the terminations embody intent, the evidence of intent will be oral testimony, which the fact finder may chose to discredit.
We will mention some of the evidence that raises genuine issues of material fact regarding pretext, as to plaintiffs in alphabetical order, and we will begin with Patricia A. Belfiore. She was laid off in May 1994 at the age of 56 after 27 years as a secretary. Her duties were both secretarial and administrative. She was replaced by Bobbe Guillory who was much younger and had very little experience. Also, according to substantial summary judgment evidence, she was far less qualified than Belfiore. There is summary judgment evidence that Guillory simply replaced Belfiore. Dresser's position is that only a small part of Belfiore's duties were carried out by Guillory and that Belfiore's job was eliminated. There is a genuine factual dispute as to whether this was true.
The Dresser manager of materials, James Markley, laid off Fred D. Greer who, at 61, was the oldest salaried employee out of the 15 Markley supervised. Greer was a production control supervisor, and had worked in production and inventory control for 31 years. Markley eliminated Greer's job as "redundant." Greer was working in the safety relief line of valves which before the layoff accounted for more than half of Dresser's shipments. Younger, less qualified employees out of the 15 were retained as performing essential jobs, but their jobs before and after the layoffs were only bits and pieces of that of a production control supervisor. Aware that layoffs were coming, Markley moved Jim Parish, the youngest of the 15, to another job to "protect" him and replaced Parish with another younger employee, Sonnier. Greer was evidently far more qualified for those jobs than either Parish or Sonnier. Reigler testified that Dresser did not consider whether Greer was capable of performing other jobs when his job was eliminated.
Betty Gail Hazelton, a secretary for 28 years, was laid off at the age of 55. Although Dresser maintains that her job was eliminated, there is evidence that a younger secretary was temporarily promoted and later permanently assigned to perform substantially Hazelton's former duties. This evidence included a Dresser newsletter. Also, another younger secretary in the marketing division where Hazelton worked, and who performed the same job functions, was retained while Hazelton was laid off.
W.A. "Buck" Henry had been working for Dresser for 29 years and was 56 years old when he was laid off in May 1994. He had been a shop supervisor or production foreman for 19 years. There were nine such supervisors, or foremen, one of whom Dresser decided to let go for the RIF. There were five senior foremen that Dresser exempted from the layoff. Of the remaining four, Henry was the oldest. He was the one laid off. Dresser explained Henry's layoff as a decision that, the first shift having six foremen and the second shift having three foremen, there was less need for foremen on the first shift than the second. Henry worked on the first shift and Mike Sharbino, the youngest of the four foremen, worked on the second shift. Henry was laid off, and Sharbino was retained. However, seven weeks after Henry was laid off, Sharbino was moved from the second shift to the first shift. Also, there is affidavit evidence that when business improved, Dresser hired four new, and younger, production supervisors or foremen, and Henry was not offered any of those jobs.
The next oldest besides Greer of the 15 salaried employees that Markley supervised was plaintiff Jerry Maxey, and Markley laid him off too. He was 55. The inventory stockroom required two men. Maxey was one of those. Merv Sonnier, younger and untrained, was placed in charge of the stockroom before the layoff when Maxey was let go. Dresser declares that Maxey's job was eliminated with his co-worker absorbing Maxey's responsibilities. But Sonnier in his deposition testified that he took over Maxey's job.
Joseph Rushton, who had worked in the toolroom as a supervisor longer than anybody else, was laid off at the age of 52. Other younger members of his employment group who were arguably less qualified, were retained. There is no documentation about why the position was chosen for elimination. His immediate supervisor, Ralph Foster, testified *1241 in his deposition that he did not know who decided to lay off Rushton. Rushton was better qualified than the younger man, John Lincecum, who became a production supervisor on the third shift, and more qualified than other younger men hired as production foremen after Rushton was terminated.
Markley, who had made the layoff decisions regarding Greer and Maxey, also decided on the release of Russell W. Scott. He was one of the five buyers supervised by Markley. Of the five buyers, Scott was the second oldest; Buddy Branton was the oldest. Dresser decided that four buyers were all that were needed, and decided to eliminate the one with the least seniority, Scott. There is evidence that Dresser knew, at the time Scott was laid off, that Branton was going to retire. If that was so, a finder of fact could disbelieve Dresser's explanation that Scott was laid off to reduce the number of buyers to four. Moreover, there is evidence that shortly after Scott's layoff, plans were afoot to move Don Whiddon over to replace the retiring Branton. Scott was arguably better qualified than Whiddon.
Cletus Steinhoff, the first person Dresser hired in Louisiana, worked from March 1961 to May 1994 when he was laid off at the age of 56. David McHugh, 26, hired in 1994, was trained in Pineville by Steinhoff. McHugh was then assigned to Chicago to work on projects involving Dresser's Dewrance valves. This was Steinhoff's area of expertise in Pineville. Steinhoff was laid off, and McHugh was retained. Dresser's explanation was that they wanted a salesman in the northeast, and that the technical support part of Dewrance valve work had been shifted from Pineville to the English factory. Steinhoff, a native of Minnesota, stated that he would have moved to Chicago as Dewrance project coordinator, and the record suggests that McHugh was doing in Chicago exactly what Steinhoff had been doing in Pineville. Also, Steinhoff's affidavit introduced a question about the pretextual character of the explanation that Dewrance technical support was moved to England, by raising the time zone factor that the English plant closes at 10 a.m. Central Standard Time, the very time when United States customers begin to need its services. As further evidence of the pretextual nature of these explanations, the plaintiffs point to the inconsistencies in the treatment of Steinhoff and the treatment of Henry. Henry was supposedly let go because he had less senior status than others, but Steinhoff, a senior project coordinator, was dismissed while less qualified and younger employees who had attained the simple status of project coordinators were retained.
The summary judgment as to each plaintiff shows a prima facie case exists that the termination favored younger workers. Dresser's proffered explanations do not eliminate genuine issues of material fact that its reasons for termination were pretextual. At this stage, the plaintiffs did not have to prove pretext, but rather whether there is a genuine issue of fact regarding pretext. Hall v. Gillman, Inc., 81 F.3d 35 (5 Cir.1996).
Therefore, we reverse the trial court's summary judgment and remand the case for a trial on the merits. All costs of this appeal are assessed to appellees.
REVERSED AND REMANDED.
NOTES
[1] Patricia A. Belfiore, Fred D. Greer, Betty Gail Hazelton, W.A. "Buck" Henry, Jerry Maxey, Joseph Rushton, Russell W. Scott, and Cletus Steinhoff.
[2] The captioned case was consolidated with a companion, Fred Greer, et al. v. Dresser Industries, Inc., et al., 98-130 (La.App. 3 Cir. 7/1/98); 715 So.2d 1241. We are handing down a separate judgment in the companion case.
[3] Repealed by Acts 1997, No. 1409, subsequent to the filing of the present action; see now La. R.S. 23:311 et seq.
[4] Under La.R.S. 23:311 (see footnote 1), Louisiana's new age discrimination law reads in paragraph C: "The prohibitions of this part shall be limited to individuals who are at least forty years of age." Unlike the repealed LADEA, the new law states no upper age limitation.