801 So.2d 457 (2001)
Tanya H. BRITTAIN, Plaintiff-Appellee,
v.
FAMILY CARE SERVICES, INC., Defendant-Appellant.
No. 34,787-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2001.
*458 Lavalle B. Salomon, Monroe, Counsel for Appellant.
Frederick B. King, Monroe, Counsel for Appellee.
Before GASKINS, CARAWAY and PEATROSS, JJ.
CARAWAY, J.
The employee in this dispute claims that the employer is liable for employment discrimination by denying work assignments to her during her pregnancy. Through a motion for partial summary judgment, the employee first sought and obtained a judgment *459 finding the employer liable. Following a trial, the court assessed and awarded damages. The employer appeals both judgments, and we now reverse and remand, finding the existence of genuine issues of material fact regarding the issue of liability which was improperly decided by summary judgment.

Facts and Procedural History
On May 21, 1997, Tanya H. Brittain (hereafter "Brittain") filed this suit alleging damages from lost wages, emotional distress and special damages resulting from Family Care Services, Inc.'s (hereafter "FCS") unlawful employment practices against her as a pregnant employee in violation of 42 U.S.C.A. § 2000e-2. The petition alleged that Brittain had received a right to sue letter from the E.E.O.C. on February 26, 1997.
Brittain began working for FCS on March 17, 1995 as a personal care attendant, earning $5.25/hour. On May 15, 1995, she notified her supervisor, Anne Conville (hereafter "Conville") that she was pregnant. Brittain alleged that during the next two months, the number of hours she was scheduled to work gradually diminished until July 23, 1995, when she was told that no more work assignments were available due to Medicaid cuts. When Brittain applied for unemployment benefits, FCS reported that she had left work voluntarily and turned work down, so the benefits were denied. Thereafter, Brittain appealed the unemployment benefit disqualification. The transcripts of the two administrative hearings conducted in September and October 1995 at the appeals tribunal office (hereafter collectively the "Transcript") were the only evidence filed in support of Brittain's motion for partial summary judgment on the issue of liability.
At the second hearing, Brittain and Conville both testified. Brittain maintained that she did not quit her job but was simply told that there was a lack of work due to Medicaid cuts. Conville testified as follows:
A. When a person becomes pregnant, they can't just go out to any home because in some of the homes we have to do lifting and ... pulling and turning and this puts the worker in jeopardy.
Q. Now, who decides this, you or the employee?
A. The company.
Q. So, she's pregnant, you feel that she's not able to perform all assignments?
A. Yes, sir.
* * * * *
Q. But, this is a company rule when a lady's pregnant then you have to assign her to people that ... don't have to be lifted?
A. Uh huh. Yes, sir.
* * * * *
Q. What's her status right now with Family Healthcare?
A. There is no work available.
Q. Has she contacted you any since this ...
A. No, sir.
Q. ... last day of work in July?
A. No she hasn't.
Q. Do you anticipate her returning to work upon the birth of her baby?
A. If she's able to work and she wants to go to work. She was a very good worker.
Q. Has she been taken off of the books, as an employee?
A. No, sir. She has not and there has not been, uh, a separation notice written up on her.
*460 Ruling in Brittain's favor in the partial summary judgment, the trial court found that there was no genuine issue of material fact as to FCS' liability for its discriminatory conduct. Subsequently, a bench trial to determine the remaining issue of damages was held on August 10, 1999. The trial court issued its judgment assessing damages in the amount of $6,000.00 on July 25, 2000. In written reasons, the trial court stated that having already found in favor of Brittain on her motion for partial summary judgment, its opinion was confined solely to the damages aspect of Brittain's claim.

Discussion

Summary Judgment
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Babin v. Winn-Dixie Louisiana, Inc., 00-C-0078 (La.6/30/2000), 764 So.2d 37; Boudreaux v. Louisiana Casino Cruises, Inc., 99-CA-1168, (La. App. 1st Cir.6/23/00), 762 So.2d 1200. Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Boudreaux v. Louisiana Casino Cruises, Inc., 762 So.2d at 1204; Davis v. Bd. of Supervisors of Louisiana State Univ. and Agric. and Mechanical College, 97-CA-0382 (La. App. 4th Cir.3/18/98), 709 So.2d 1030. The determinative factor of materiality is the applicable substantive law. Hicks v. Central Louisiana Elec. Co., Inc., 97-CA-1232 (La.App. 1st Cir.5/15/98), 712 So.2d 656.
Even though the summary judgment procedure is favored, it is not a substitute for trial and is often inappropriate for judicial determination of subjective facts such as motive, intent, good faith or knowledge. Oaks v. Dupuy, 32,070 (La. App.2d Cir.8/18/99), 740 So.2d 263 (citing Greer v. Dresser Industries, Inc., 98-129 (La.App. 3d Cir.7/1/98), 715 So.2d 1235). One reason is that these subjective facts call for credibility evaluations and the weighing of testimony and summary judgment is inappropriate for such determinations. Id. Moreover, it is not a function of the trial court on a motion for summary judgment to determine or even inquire into the merits of issues raised or to weigh conflicting evidence on the existence of material facts. See, Harrison v. Parker, 31,844 (La.App.2d Cir.5/5/99), 737 So.2d 160. When affidavits and exhibits present a choice of reasonable inferences, such inferences must be viewed in the light most favorable to the party opposing the motion for summary judgment. Tucker v. Northeast Louisiana Tree Service, 27,768 (La. App.2d Cir.12/6/95), 665 So.2d 672; Schroeder v. Bd. of Supervisors of Louisiana State Univ., 591 So.2d 342 (La.1991).

Brittain's Employment Discrimination Claim
Brittain has alleged a cause of action under Title VII[1] and La. R.S. 23:301, et seq.[2] The Louisiana jurisprudence *461 has reviewed such claims following the analysis set forth in federal cases for discrimination under Title VII. Louisiana's anti-discrimination law is substantively similar to the federal statute; it is thus appropriate to consider interpretations of the federal statute. King v. Phelps Dunbar, 743 So.2d at 187; Hailey v. Hickingbottom, 715 So.2d at 650-651; Spears v. Rountree Oldsmobile-Cadillac Co., 26,810 (La.App.2d Cir.4/5/95), 653 So.2d 182.
Title VII of the Civil Rights Act of 1964 made it an unlawful employment practice for an employer to discriminate against an employee because of the employee's sex. The Pregnancy Discrimination Act of 1978 ("PDA") amended the definitional section of Title VII to make clear that discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex. Lapeyronnie v. Dimitri Eye Center, Inc., 96-CA-2608 (La.App. 4th Cir.4/16/97), 693 So.2d 236, 238.
The "PDA" amended the definitional section of Title VII as follows:
The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work ...
42 U.S.C. § 2000e(k); Urbano v. Continental Airlines, Inc., 138 F.3d 204 (5 Cir. 1998).
The language of Title VII reveals Congress' intent to assure equality of employment opportunities and to eliminate discriminatory practices on the basis of race or any other impermissible classifications. Quaratino v. Tiffany & Co., 71 F.3d 58 (2 Cir.1995) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). An employment discrimination claim based on pregnancy is analyzed like Title VII discrimination claims in general. Urbano, 138 F.3d at 206; Murray v. Wackenhut Corp., 2001 WL 263101 (E.D.La.3/15/2001).
When a plaintiff alleges disparate treatment, liability depends on whether the protected trait of pregnancy actually motivated the employer's decision. See, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To establish a prima facie case of discrimination under Title VII, a plaintiff may prove her claim either through direct evidence, statistical proof, or the test established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Urbano, 138 F.3d at 206.
Recognizing that the question facing triers of fact in discrimination cases is both sensitive and difficult, and that there will seldom be eyewitness testimony as to the employer's mental processes, courts have employed some variant of the framework articulated in McDonnell Douglas to analyze discrimination claims that are based principally on circumstantial evidence. Id. McDonnell Douglas and subsequent decisions have established an allocation of the *462 burden of production and an order for presentation of proof in discriminatory treatment cases. Id.
First, the plaintiff must has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. A plaintiff can establish a prima facie case of pregnancy discrimination under Title VII by showing (1) she is a member of a the protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a nonpregnant employee. Reeves, 530 U.S. at 142, 120 S.Ct. 2097; Quaratino, 71 F.3d at 64; Green v. Louisiana, 2001 WL 474280 (E.D.La.2001). Second, assuming the plaintiff demonstrates a prima facie case, the burden of production shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory reason for discharging the employee. Reeves, 530 U.S. at 142, 120 S.Ct. 2097; Quaratino, 71 F.3d at 64; Green, 2001 WL 474280 at 6; Duplessis v. Warren Petroleum, Inc., 95-1794 (La.App. 4th Cir.3/27/96), 672 So.2d 1019; Plummer v. Marriott Corp., 94-2025 (La. App. 4th Cir.4/26/95), 654 So.2d 843, writ denied, 95-1321 (La.9/15/95), 660 So.2d 460.
Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Reeves, 530 U.S. at 143, 120 S.Ct. 2097; Quaratino, 71 F.3d at 64; Green, 2001 WL 474280 at 6; Duplessis v. Warren Petroleum, supra; Guillory v. State Farm Ins. Co., 94-1405 (La.App. 4th Cir.9/28/95), 662 So.2d 104. And in attempting to satisfy this burden, the plaintiff, once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision, must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Reeves, 530 U.S. at 143, 120 S.Ct. 2097; Quaratino, 71 F.3d at 64; Green, 2001 WL 474280 at 6; Duplessis v. Warren Petroleum, supra.
From our review of the Transcript of the administrative hearing to determine eligibility for unemployment benefits, we do not find that sufficient proof of a prima facie case of discrimination was presented in this summary judgment setting. The brief description of Brittain's job with FCS indicates that she worked as "a trainer, a Personal Care Attendant," and that she was assigned by FCS to work with patients in their homes. In particular, her work with four patients was discussed by Brittain and Conville. Brittain stopped working with each patient for various reasons, none of which serve as the basis for her claim. While working for the first patient, she began experiencing morning sickness and obtained a doctor's report which allowed her to stop working for a time period. She returned and was assigned to a bedridden patient whose condition caused Brittain to become depressed. She was then reassigned to a patient who needed 24-hour care. Because Brittain developed a very close relationship with this patient, the patient became hostile to other FCS employees, and Brittain was again reassigned. Brittain's work with the final patient was curtailed and eventually ceased altogether due to Medicaid cuts. The Transcript testimony does not describe the proximity of time between each of these assignments, the manner in which FCS assigned patients to its employees, or the numbers of patients and employees involved in FCS' work assignments. There was no testimony indicating that *463 FCS hired Brittain and guaranteed continuing work assignments. The bare record indicates that Brittain may have sometimes worked on a part-time basis.
Conville's testimony discloses that certain assignments of patients to Brittain were withheld due to a "company rule" which could unfairly discriminate against pregnant employees. In spite of the rule, Brittain was assigned work for two months after announcing her pregnancy. Conville testified that in late July, Brittain's work assignments ended due to FCS' lack of patients.
Since the subject of the administrative proceeding was to determine eligibility for unemployment benefits and not FCS' alleged discriminatory practices, whether application of the "company rule" discriminated against Brittain in August and September of 1995 is not revealed by the Transcript. Thus, despite Brittain's argument that direct evidence establishes FCS' discrimination toward her, it may only be inferred from Conville's testimony that the "company rule" was applied to Brittain after July and that work assignments were made to other, non-pregnant employees. Nevertheless, it may also be reasonably inferred that there was a general downturn in FCS' patient load and available work assignments for all FCS employees. The Transcript's failure to directly address these issues results in the lack of adequate and uncontroverted proof of the fourth element of the McDonnell Douglas test for discrimination. Attempting to assess Conville's testimony by weighing conflicting inferences which can be drawn from her discussion of Brittain's work and FCS' business is inappropriate in the context of a motion for summary judgment.
Accordingly, we reverse the trial court's grant of partial summary judgment on the issue of liability and remand for further proceedings. Costs of appeal are assessed to Tanya H. Brittain.
REVERSED AND REMANDED.
NOTES
[1] See, 42 U.S.C.A. § 2000(e)-2.
[2] Plaintiff's claim arose prior to the 1997 enactment of Louisiana's comprehensive employment discrimination statute (La. R.S. 23:301, et seq); thus, analysis of plaintiff's claim under state law is based on the following provisions:

1. La. R.S. 23:1006-1008 (prohibiting discrimination against an employee because of pregnancy, childbirth or a related medical condition); and,
2. La. R.S. 51:2231, et seq., (providing for the execution of federal anti-discrimination laws and creating the Louisiana Commission on Human Rights).
See, Hailey v. Hickingbottom, 30,728 (La. App.2d Cir.6/24/98), 715 So.2d 647 ("Both statutes contain similar language tracking the language of Title VII of the federal law under which sexual harassment claims have been recognized as a form of discrimination based upon sex.") Acts 1997, No. 1409, repealed the above statutory provisions effective August 1, 1997. The consolidated provisions of La. R.S. 23:301, et seq, are substantive and cannot be retroactively applied. King v. Phelps Dunbar, L.L.P., 98-C-1805 (La.6/4/99), 743 So.2d 181.