Nicola TAVOLONI, Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER, et al., Defendants.

No. 97 Civ. 2967(LAK).

United States District Court, S.D. New York.

Nov. 16, 1998.

Terence C. Scheurer, Ethan Y. Leonard, Scheurer, Wiggin & Hardy, for Plaintiff.

Carla A. Kerr, Derek J.T. Adler, Hughes Hubbard & Reed LLP, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff, a professor of medicine at the Mount Sinai School of Medicine ("Mt.Sinai"), has brought this action against his employer and others, complaining in essence that he has been mistreated and discriminated against. Defendants counter that plaintiff changed his research focus and, in consequence, became unproductive and unable to attract essential grant funding. In consequence, they chose to allocate salary and other resources to more productive faculty members.

The Court previously dismissed a number of plaintiff's claims pursuant to defendants' Rule 12(b)(6) motion in a reported opinion, familiarity with which is assumed.[1] The remaining claims are that (1) defendants reduced plaintiff's salary and harassed him "with the specific intent of interfering with plaintiff's rights to his retirement benefits ..." in violation of Section 510 of ERISA[2] (cpt ¶ 73), (2) Mt. Sinai breached its employment contract with plaintiff by constructively discharging him, cutting his salary to below the minimum rate for his rank, and violating his right to academic freedom, and (3) plaintiff is entitled to recover as a third party beneficiary of a five year 1989 grant by the National Institutes of Health ("NIH") to Mt. Sinai because Mt. Sinai failed to provide him with certain laboratory facilities.

*The ERISA Claim*

■ Section 510 of ERISA provides in relevant part:

> "It shall be unlawful for any person to discharge; fine, suspend, expel, discipline or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."

In order to prevail on a Section 510 claim, the plaintiff must demonstrate that an employer, in taking adverse employment action against the employee, "was at least in part motivated by the specific intent to engage in activity prohibited by § 510."[3] In other words, in the context of this case, plaintiff must demonstrate that Mt. Sinai cut his sala-

ry and took the other actions complained of at least in part for the specific purpose of interfering with or preventing plaintiff from realizing his benefits under the Mount Sinai Tax Sheltered Annuity Plan (the "Plan"). Moreover, it is clear that no claim "lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind," an adverse employment action. *Id.*

■ In evaluating motions for summary judgment on Section 510 claims, the Court applies the familiar *McDonnell–Douglas* burden shifting analysis.[4] Plaintiff has the burden of making out a *prima facie* case by demonstrating that he is a member of a protected group, he was qualified for the position or other benefit claimed, and he was discharged or treated adversely in circumstances that give rise to an inference of discrimination. If the plaintiff raises a genuine issue of fact as to each of those three elements and thus makes out a *prima facie* case, the burden shifts to the defendants to come forward with a legitimate, non-discriminatory reason for their actions. At that point, the presumption generated by plaintiff's *prima facie* case drops out.[5] The plaintiff then has the burden of raising a genuine issue of fact on the ultimate issue— whether the defendants' action was motivated in part by the forbidden discriminatory animus.[6] Proof that the defendants' proffered reason for their actions is false "may serve as evidence that the defendant intentionally discriminated."[7] Hence, even if a plaintiff raises a genuine issue as to pretext, the defendants nevertheless may be entitled to summary judgment.[8] The plaintiff must raise an issue of fact as to whether "discrim-

1. *Tavoloni v. Mount Sinai Medical Center,* 984 F.Supp. 196 (S.D.N.Y.1997).

2. 29 U.S.C. § 1140.

3. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1111 (2d Cir.1988).

4. *Id.* at 1111–14. The Court is mindful of Judge Chin's thoughtful opinion arguing for the rejection of the *McDonnell–Douglas* approach in considering summary judgment motions in discrimination cases. *Lapsley v. Columbia University– College of Physicians & Surgeons,* 999 F.Supp. 506, 514–15 (S.D.N.Y.1998).

5. *Fisher v. Vassar College,* 114 F.3d 1332, 1336 (2d Cir.1997) (*in banc*), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).

6. *Id.*

7. *Id.* at 1337.

8. *See id.* at 1338–39 ("a finding of pretext, together with the evidence comprising a prima facie case, is not always sufficient to sustain an ultimate finding of intentional discrimination").

ination was [a] real reason" for the action complained of even if there is an issue of fact as to pretext.[9]

In this case, plaintiff concededly was a member of a protected group so the first element of the *prima facie* case is satisfied. The parties, however, are at loggerheads as to whether plaintiff was qualified, defendants arguing that his lack of external funding sources effectively "disqualified" him from receiving the salary and other benefits of which he was deprived and plaintiff arguing that this prong of the *prima facie* case requires only proof of minimal technical competence.

In cases involving professionals such as the plaintiff, in which any assessment of qualifications is necessarily far more complex and to some extent subjective than determining an employee's typing speed or weight-lifting capability, fine lines might be drawn as to which aspects of qualifications are properly considered for purposes of determining the sufficiency of plaintiff's *prima facie* showing and which are more properly considered only at later stages of the analysis.[10] The Court, however, here assumes—without deciding—that Dr. Tavoloni has offered sufficient evidence of qualification to meet the requirements of the second prong of his *prima facie* case. And there is little point in considering for purposes of assessing his *prima facie* proffer whether the actions of which he complains here occurred in circumstances giving rise to an inference of discrimination, as that issue is the same, or nearly so, as the ultimate issue. In consequence, the Court assumes that Dr. Tavoloni has made out a *prima facie* case.[11]

There is no question here that defendants have proffered nondiscriminatory reasons for

their actions—in summary, that Dr. Tavoloni has been unproductive and failed to obtain external funding. So the question becomes whether there is a genuine issue of fact as to whether defendants acted for the specific purpose of interfering with Dr. Tavoloni's pension rights.

Plaintiff seeks to raise an issue of fact as to the truth of Mt. Sinai's stated reasons for its actions. In essence, he argues that Mt. Sinai long has been trying to force him out of his tenured position, that it has withheld facilities necessary to the success of his research, and that the salary cuts of which he complains were not related to the lack of external funding.[12] Indeed, he goes so far as asserting that the salary cuts were for "the sole purpose of forcing me out of my job and not ... because I lost external funding."[13] But it is unnecessary to engage in detailed analysis of these claims. Even assuming that Dr. Tavoloni's contention is correct and that Mt. Sinai's actions were motivated by a desire to force him out of his tenured position, his claim nevertheless would fail.

It is important in assessing plaintiff's opposition to the motion to recognize that (1) the *only* basis for plaintiff's claim of discrimination is the assertion that the reasons given by Mt. Sinai are pretextual [14] and (2) a showing of pretext does not necessarily suffice to get a discrimination plaintiff to a jury or, by parity of reasoning, past a well supported motion for summary judgment.[15] As the *in banc* Second Circuit wrote in *Fisher*, "the label 'pretext' does not answer the question: pretext for what? In some cases, an employer's proffered reason is a mask for unlawful discrimination. But discrimination does not lurk behind every inaccurate statement." [16]

---

9. *Id.* at 1339 (quoting *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995)) (internal quotation marks omitted).

10. *See generally Naftchi v. New York University*, 14 F.Supp.2d 473, 480–81 (S.D.N.Y.1998) (discussing Second Circuit cases).

11. *See, e.g., Lanahan v. Mut. Life Ins. Co. of N.Y.*, 15 F.Supp.2d 381, 384 (S.D.N.Y.1998) (assuming existence of *prima facie* case and passing to ultimate issue); *Lapsley v. Columbia University–College of Phys. & Surgeons*, 999 F.Supp. 506, 514–

15. (S.D.N.Y.1998) (urging abandonment of *McDonnell–Douglas* framework for analysis of summary judgment motions).

12. Tavoloni Aff. *passim.*

13. Tavoloni Aff. ¶ 20.

14. Pl. Mem. 8.

15. *Fisher*, 114 F.3d at 1338.

16. *Id.* at 1337.

In consequence, "[t]he sufficiency of the finding of pretext to support a finding of discrimination depends on the circumstances of the case."[17]

In this case, plaintiff's burden is to adduce evidence that would justify a trier of fact reasonably to conclude that Mt. Sinai cut his salary and subjected him to the other alleged indignities of which he complains for the specific purpose, perhaps among others, of interfering with his rights under the Plan. But there is absolutely no support for such a proposition. Even plaintiff does not contend that there is any direct evidence of such a purpose. And there is no circumstantial evidence either.

Plaintiff is vested in the Plan that is the subject of his ERISA claim. Hence, Mt. Sinai cannot prevent him from reaping the benefits to which he is entitled. It could not do so even if plaintiff left its employ. The only effect on plaintiff's rights under the Plan of any of the matters complained of in this lawsuit is that the pay reductions reduced Mt. Sinai's annual contributions and, *pro tanto*, plaintiff's ultimate benefits.[18] But this is not sufficient to raise a genuine issue of fact, at least absent any other evidence suggesting that reduction of contributions to the Plan was a motivating factor in Mt. Sinai's actions.

It is undisputed that Mt. Sinai's required contribution to the Plan ranges from 6 percent to 10 percent of the employee's salary, depending upon the employee's classification.[19] In consequence, by cutting plaintiff's salary from approximately $109,000 per annum to approximately $48,000 per annum,

Mt. Sinai saved $61,000 a year in reduced compensation and, at most, $6,100 in Plan contributions. Put another way, only 9 percent of the savings achieved by the salary cuts were attributable to reduced Plan contributions. In all the circumstances of this case, no rational trier of fact reasonably could find from all of the evidence that Mt. Sinai acted, even in part, with the requisite specific intent to interfere with plaintiff's rights under the Plan.[20] Rather, plaintiff can establish no more than "an incidental loss of benefits ... [that does] not constitute a violation."[21] Defendants therefore are entitled to summary judgment dismissing the ERISA claim.

## The Contract Claims

### Constructive Discharge

The record now establishes that plaintiff remains employed by Mt. Sinai as a professor. His constructive discharge claim therefore must be dismissed.[22]

### Salary Cuts

█ The record conclusively establishes also that plaintiff's annual salary is $48,286, which is at or above the minimum prescribed by the *Faculty Handbook* that the parties agree constitutes the contract between them.[23] In consequence, plaintiff's claim that Mt. Sinai breached its contract with him by reducing his salary is without merit.

### Academic Freedom

█ Plaintiff asserts that Mt. Sinai breached the contract set forth in the *Faculty Handbook* by taking away the tools of his

---

**17.** *Id.* at 1338.

**18.** Plaintiff's contention that the Court should consider also that the severity of the pay cuts left him unable to make the maximum allowable employee contributions to the Plan is misguided and, in any event, immaterial. Mt. Sinai does not stand to benefit from the reduction of Dr. Tavoloni's own contributions to his Plan account. Even if it does, the benefit is purely incidental.

**19.** Kruger Aff. ¶ 8.

**20.** *See Dister*, 859 F.2d at 1111.

**21.** *Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987); *accord, Leh-man v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 330–31 (1st Cir.1996).

**22.** *See, e.g., Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 359 (2d Cir.1993); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983).

**23.** Def. 56.1 St. ¶ 50. Plaintiff's Rule 56.1 statement denies that the minimum faculty salary for a professor is $46,880 as Mt. Sinai asserts, but he has submitted no evidence to the contrary. Similarly, his affidavit faults Mt. Sinai's contention that his salary is somewhat above the minimum, but provides no evidence that it is below the minimum. Tavoloni Aff. ¶ 18.

trade and thus preventing him from pursuing his chosen research effectively and depriving him of academic freedom. He points to nothing in the *Handbook*, however, that required any particular level of support or facilities. In the absence of a specific contractual provision, there is no merit to this claim under the law of New York. As the Appellate Division, First Department, wrote in rejecting a similar claim brought by a medical professor at the New York University School of Medicine:

> "While the complaint recites a litany of academic and administrative grievances couched in terms of a violation of a contractual right to tenure or a tortious interference with that right, it is significantly devoid of any reference to the contractual basis of these privileges of tenure. For example, the main focus of the complaint is plaintiff's claim of a right to office space. * * * Yet there is nothing in the complaint or the record to show that tenure guarantees a faculty member any office at all, much less space of his own choosing. * * *

> "Plaintiff premises his asserted contractual rights on the proposition that the notion of tenure is instinct with the obligation to provide faculty members with adequate research facilities, as well as other benefits commensurate with their position. While tenure is a concept of some elasticity and, no doubt, the source of many rights, it cannot be the wellspring of every conceivable academic amenity and privilege. Nor can the University's academic and administrative prerogatives be impliedly limited by custom, or by a strained theory of contractual construction. * * * The University has never expressly, by contract or otherwise, obligated itself to provide the amenities plaintiff claims, and thus has not relinquished its authority to. make its own academic judgments and to administer and allocate its resources. The benefits which plaintiff seeks are undoubt-

edly perquisites of faculty life, but they are not contract entitlements.

> "Thus, notwithstanding the allegations of a deprivation of contractual concomitants, plaintiff's breach of contract claims against the University and the Medical Center fail to state a cause of action." [24]

So too here.

### Third Party Beneficiary Claim

■ Dr. Tavoloni's final claim is that he is entitled to sue as a third-party beneficiary for alleged breach of a contract between the National Institutes of Health and Mt. Sinai, specifically a 1989 NIH grant. The grant in question was an award by the Public Health Service through the NIH pursuant to 42 U.S.C. § 241 and part 52 of title 42 of the Code of Federal Regulations.[25] As several courts have held, such grants are governed by statute, not contract law.[26] The measure of plaintiff's rights therefore is the statute and regulations thereunder, not principles of contract. As plaintiff has pointed to nothing in the applicable statute and regulations that gives rise to any right to relief, this claim must be dismissed.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment dismissing the complaint is granted in all respects.

SO ORDERED.

---

**24.** *Gertler v. Goodgold,* 107 A.D.2d 481, 484–85, 487 N.Y.S.2d 565, 568–69 (1st Dept.), *aff'd,* 66 N.Y.2d 946, 498 N.Y.S.2d 779, 489 N.E.2d 748 (1985).

**25.** Tavoloni Dep. Ex. 2; *see* Tavoloni Dep. 39–42.

**26.** *See United States v. Vanhorn,* 20 F.3d 104, 110 (4th Cir.1994); *United States v. Becker,* 995 F.2d 779, 783 (7th Cir.1993); *Rubinstein v. Mayor and City Council,* 295 F.Supp. 108, 112 (D.Md.1969).