**Lloyd RAJCOOMAR and H. Jason Smith,**

v.

**TJX COMPANIES, INC.**

**No. 02 CIV. 6633(SCR).**

United States District Court, S.D. New York.

March 25, 2004.

---

Bernard Weinreb, Suffern, NY, for Plaintiffs.

Leonard A. Colonna, Peter A. Walker, Seyfarth Shaw, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

## I. *INTRODUCTION:*

### A. PROCEDURAL HISTORY:

Lloyd Rajcoomar ("Rajcoomar") and H. Jason Smith ("Smith"; collectively Rajcoomar and Smith are referred to herein as, the "Plaintiffs") filed this lawsuit against TJX Companies, Inc. ("Defendant") claiming that they were terminated from their employment with the T.J. Maxx Loss Prevention Department on the basis of their national origin and race, respectively. Rajcoomar is a combination of Puerto Rican and Indian. Smith is African–American. Rajcoomar is alleging that the De-

fendant terminated his employment on the basis of his national origin. Smith is alleging that the Defendant terminated his employment on the basis of his race. The Plaintiffs bring this lawsuit pursuant to Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law, N.Y. Exec. L. Sections 290–301 ("NYSHRL").

The Defendant has made a motion for summary judgment (the "Defendant's Motion") on three grounds. First, the Defendant claims that the Plaintiffs cannot establish a prima facie case of discrimination because they cannot show that their terminations took place under circumstances giving rise to an inference of discrimination. Second, assuming *arguendo* that a prima facie case had been made, the Defendant argues that it has offered a legitimate, non-discriminatory explanation for its termination of the Plaintiffs' employment. Third, assuming *arguendo* that a prima facie case has been made, which has been countered by a legitimate non-discriminatory reason, the Defendant submits that the Plaintiffs cannot rebut the Defendant's legitimate reason. The Plaintiffs responded to the Defendant's Motion ("Plaintiffs' Opposition") and the Defendant replied ("Defendant's Reply").

## B. STATEMENT OF FACTS:

Both of the Plaintiffs were hired by the Defendant in March 2001 for positions within the Defendant's Loss Prevention Department. The Loss Prevention Department is responsible for conducting store surveillance, uncovering employee dishonesty and ensuring the physical safety and security of the assigned store. Rajcoomar was employed as a Lead Detective and Smith was employed as a Loss Prevention Detective.[1] As part of their job responsibilities, both Plaintiffs were issued handcuffs in the event they had to restrain suspected shoplifters. The Defendant submits that the Plaintiffs were trained in the proper use of the handcuffs and that T.J. Maxx had a strict policy in place regarding their use.[2] (Defendant's Motion, Page 2). Additionally, the Defendant submits that the Plaintiffs acknowledge that (a) policy prohibited the use of handcuffs except when necessary by the detectives and (b) violation of the policy could lead to termination. (Defendant's 56.1 Statement, ¶ 21) (citing Smith Deposition, Page 52 and Rajcoomar Deposition, Page 65 and 75).

On or about August 21, 2001, the Plaintiffs were working at the T.J. Maxx store in Middletown, New York. Casey Birne ("Birne"), a female, juvenile employee of the Defendant asked Smith to handcuff her while in the presence of Rajcoomar. The Defendant claims that according to a written statement by Rajcoomar, Smith obliged and handcuffed Birne. Smith contends that he handed Birne the handcuffs, she handcuffed herself and that he immediately opened the handcuffs. Rajcoomar, as Smith's superior, did not take any action at the time, nor did he subsequently report the incident to his superiors. The Defendant asserts that the incident occurred when Smith and Rajcoomar entered the back of the store and found

---

1. Rajcoomar was made a Lead Detective because of previous experience in the loss prevention field. Lead Detectives are expected to serve as mentors to non-lead detectives and to ensure that T.J. Maxx's loss prevention policies are adhered to. Lead Detectives are compensated at a higher rate.

2. The Defendant states that due to the nature of their function, the Loss Prevention Department has its own separate policies and procedures manual and Loss Prevention employees attend a five-week long orientation session where they receive training in the policies and procedures of the Loss Prevention Department.

several unsupervised employees socializing. To the contrary, the Plaintiffs contend that the incident occurred at an employee open house, where the Plaintiffs at the direction of the Defendant, trained T.J. Maxx employees on all aspects of loss prevention.

In any event, the Middletown store manager reported the incident to Alan Abreu, the District Loss Prevention Manger for District 64 in the Mid–Atlantic Region ("Abreu").[3] Abreu and Greg St. Martin, the District Loss Prevention Investigator interviewed the Plaintiffs about the incident and both Plaintiffs prepared written statements. Rajcoomar contends that he was instructed to write a false statement regarding Smith's conduct and that he was fired because he refused to do so. Abreu informed his direct superior, Peter Melas, the Loss Prevention Regional Manager for the Mid–Atlantic Region ("Melas"), about the Plaintiffs' accounts of the incident. According to the Defendant, Melas determined that regardless of whether Smith handcuffed Birne, or whether she handcuffed herself, he had violated the T.J. Maxx handcuffing policy and directed Abreu to terminate Smith's employment. Additionally, Melas determined that Rajcoomar had "engaged in poor job performance" as a Lead Detective because he failed to instruct Smith not to violate the policy and also failed to report the incident to his superiors.

Abreu notified Smith that he was fired for violating the company's handcuffing policy. Smith signed a Corrective Action Form, which documented the fact that he was fired for violation of that policy. The Defendant contends that Rajcoomar received a written warning from Abreu and Rajcoomar subsequently ceased working for the Defendant. There is some dispute as to whether Rajcoomar was fired or whether he resigned. Rajcoomar claims he was fired; however, the Defendant denies that it terminated Rajcoomar.[4] For the purposes of this motion for summary judgment this Court assumes that he was fired, but the parties should not construe such assumption as a judgment on this issue.

## II. *ANALYSIS:*

### A. STANDARD OF REVIEW:

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact[.]" Fed.R.Civ.P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden falls on the moving party who is required to "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

---

**3.** Abreu was Rajcoomar's and Smith's immediate superior.

**4.** According to the Defendant, Rajcoomar was given a "written consultation" for the incident and that he resigned the next date because he disagreed with the punishment imposed upon himself and Smith. The Defendant concedes that for the purposes of this motion it take Rajcoomar's allegation of termination as true because all evidence must be viewed in a light most favorable to a plaintiff on a motion for summary judgment.

**B. THE** *McDONNELL DOUGLAS* **BURDEN SHIFTING ANALYSIS:**

As set forth above, the Plaintiffs have brought this action pursuant to Title VII and the NYSHRL. New York courts have required the same standard of proof for claims brought under the NYSHRL, as those brought under Title VII. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759 (2d Cir.1998). Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1) (1994). Courts decide cases brought under Title VII using the three-step analytical framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and refined in later cases. *See e.g. St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Stern v. Trustees of Columbia University,* 131 F.3d 305, 311–12 (2d Cir.1997).

Under *McDonnell Douglas* and its progeny, the plaintiff/employee bears the initial burden of producing evidence sufficient to support a prima facie case of discrimination by demonstrating membership in a protected class, qualification for the position, adverse employment action, and circumstances giving rise to an inference of discrimination. *McDonnell Douglas* at 802, 93 S.Ct. 1817. If the plaintiff satisfies this burden, the defendant/employer must "articulate a legitimate, clear, specific, and non-discriminatory reason" for its adverse employment decision. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995). If the defendant makes such a showing, the burden shifts back to the plaintiff to show that the defendant's proffered reason is pretextual and that the defendant was more likely motivated, in whole or in part, by discrimination. *See Hicks* at 515–16, 113 S.Ct. 2742; *Stern* at 312.

In the context of a motion for summary judgment a trial court must be cautious about granting summary judgment to an employer when the employer's intent is at issue. *Gallo v. Prudential Residential Services, L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994). Due to the fact that writings supporting a plaintiff's claim of intentional discrimination "are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id.* at 1224. The Second Circuit has held that the standard principles governing motions for summary judgment apply at each step of the *McDonnell Douglas* analysis. *Stern* at 312; *see* Fed.R.Civ.P. 56(c).

**C. WHETHER THE PLAINTIFFS CAN ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION:**

■ As set forth above, in order to establish a prima facie case of discrimination under Title VII, a plaintiff must present evidence that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination. *See McDonnell Douglas* at 802, 93 S.Ct. 1817; *Stern* at 311–12. For the Defendant's motion for summary judgment to be granted, there must be no questions about the material facts of the prima facie case. In the current case, the Defendant has not disputed that (a) each of the Plaintiffs belongs to a protected class—based upon race and national origin, (b) each of the Plaintiffs was qualified for the position, or (c) that the termination of each of the Plaintiffs' employment were adverse employment ac-

tions.[5] The Defendant's argument is that the terminations did not occur under conditions giving rise to an inference of discrimination; and therefore, the Plaintiffs have not satisfied a prima facie case of discrimination.

■ The Defendant argues that the Plaintiffs have "presented no evidence from which a reasonable jury could find discrimination under these circumstances." (Defendant's Motion, Page 7). Alternatively, the Defendant contends that the Plaintiffs have not presented any evidence that the "decision maker," Peter Melas, was motivated by any racial or ethnic animus. The Plaintiffs counter by arguing that Melas was not the decision maker, but instead Abreu made the decision and that Abreu has a history of discriminatory behavior. Specifically, the Plaintiffs allege the following incidents:

— Rajcoomar asserts that a task force headed by David Novak and Abreu singled out African–Americans, Hispanics and Russians for special surveillance for suspicion of theft. He claims that he was directed to record individuals belonging to such groups who looked "thuggish" and that videotape was essential. He adds that non-Russian, white customers were not singled out for such surveillance. (Plaintiffs' Opposition, Page 4).

— Rajcoomar contends that Abreu and Greg St. Martin sought his assistance in scrutinizing eleven Hispanic individuals who worked at the T.J. Maxx store in Wilton, Connecticut to determine whether they were "legitimate." Rajcoomar claims that he refused to do so because it would have been a policy

violation. The Plaintiffs claim that those eleven individuals were fired after an investigation by David Agostine. (*Id.*)

— In or about May 2001, Rajcoomar alleges that Abreu stated, "These fucking niggers are always sticking together.", when an African–American police officer responded to an incident at a T.J. Maxx store involving the theft of merchandise by an African–American employee. (Rajcoomar Deposition, Page 149).

— On an unknown date, Rajcoomar alleges that he overheard Abreu refer to a suspected shoplifter at a "black crack head." (Rajcoomar Deposition, Page 225–226).

The Defendant expressly denies that Abreu engaged in such behavior or made such comments; however, the Defendant contends that even if Abreu did make those statements it does not help the Plaintiffs as a matter of law. The Second Circuit has held that allegations than an individual uttered racial slurs does not raise an inference of discrimination in connection with an adverse employment action against a plaintiff if the "utterer" was not involved in making the adverse decision. *McLee v. Chrysler Corp.*, 109 F.3d 130, 137 (2d Cir.1997) (racial animus of plaintiff's supervisor could not be imputed to the manager who made the termination decision).

However, the facts of *McLee* diverge from the present facts. Abreu was clearly an active participant in the decision to terminate the Plaintiffs, including the following actions: (1) interrogating both Plaintiffs following the incident; (2) relaying the results of such interrogations to

---

**5.** As noted above, the Defendant disputes the fact that Rajcoomar was fired, but concedes the point for the purposes of this motion.

Melas; (3) discussing the situation with Melas; (4) notifying Smith that he was fired; and (5) informing Rajcoomar that he was being reprimanded or terminated, depending on which parties' version of the facts is accepted. The Defendant's attempt to paint Melas as the ultimate decision maker may or may not be true, but it does not follow that Abreu was not an active and important part of that decision making process. At the very least, there are material questions of fact regarding Abreu's role and the extent and influence of his involvement with the termination decisions.

Possibly realizing this outcome, the Defendant stakes out a fallback position. The Defendant states that even if Abreu is considered the decision maker and even if Abreu uttered the racial slurs, which it denies, such stray remarks by a decision maker are legally insufficient to demonstrate discriminatory animus. (Defendant's Motion, Page 9) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). The Defendant contends that there must be a nexus between the discriminatory comments and the action imposed on the Plaintiffs. The Defendant concludes that because no such nexus exists in this case, no inference of discrimination has been established. There are several incidents set forth above where Abreu is alleged to have acted in a discriminatory manner with respect to the Plaintiffs, which could create the requisite nexus. This argument fails as well because there are, at the very least, material facts in dispute as to whether such a nexus exists.

Additionally, the Defendant argues that the Plaintiffs are unable to show that the Defendant subjected them to disparate treatment. In order to establish such disparate treatment, a plaintiff must compare himself to employees who are "similarly situated in all material respects." *Shumway v. UPS*, 118 F.3d 60, 64 (2d Cir.1997). To be similarly situated the employees must (i) be subject to the same workplace standards and (ii) have committed conduct of comparable seriousness. *Graham v. L.I.R.R.*, 230 F.3d 34, 40 (2d Cir.2000). This Court agrees with the Defendant's' contention that the Loss Prevention Department has a different function than other T.J. Maxx employees and the Plaintiffs can only be compared to other members of that department.

The Plaintiffs point to an incident where Jim Emery, a white Loss Prevention Detective violated the handcuff policy, but was not fired. More particularly, the Plaintiffs allege that in August 2001 Emery apprehended an African–American suspect that he did not witness stealing. Rajcoomar claims to have witnessed the incident via surveillance tape and reported the incident to Abreu. According to Rajcoomar, Abreu did not discipline Emery, but instead said "Don't worry. She is just a black crack head and will not contest this." (Plaintiffs' Opposition, Page 2). The Defendant is free to challenge this argument; however, whether or not the incident occurred, and whether it occurred in the manner Rajcoomar asserts, are issues of fact to be resolved by a jury.

As set forth more fully above, the Plaintiffs have shown, at a minimum, that there are material issues of fact in dispute regarding whether or not the "inference of discrimination" element has been established for the purposes of a prima facie case. Taking all facts in a light most favorable to the Plaintiffs, as this Court is required to do with respect to motions for summary judgment, the Plaintiffs have established a prima facie case of discrimination.

**D. WHETHER THE DEFENDANT HAS OF-FERED A LEGITIMATE, NON-DISCRIMI-NATORY EXPLANATION FOR THE TERMI-NATION OF THE PLAINTIFFS' EMPLOY-MENT:**

■ Having determined that the Plaintiffs have alleged sufficient material facts that are in genuine dispute regarding the "inference of discrimination" element, a prima facie case exists for the purposes of this motion. The next analysis is whether the Defendant has proffered a legitimate, non-discriminatory reason for the terminations.

As described in greater detail above, the establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To rebut such presumption, the defendant must offer an explanation that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Hicks* at 507, 113 S.Ct. 2742. Such explanation must clearly set forth, by reliance on admissible evidence, reasons for the defendant's actions "which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Burdine* at 254–55, 101 S.Ct. 1089.

In the case at bar, the Defendant's proffered reason for terminating the Plaintiffs' employment—violation of the handcuff policy—is both legitimate and non-discriminatory. Clearly, the Defendant has an interest in protecting its merchandise from theft, which creates a need for the Loss Prevention Department. As part of their function, the employees of the Loss Prevention Department may at times need to detain shoplifters until the police can arrive and need handcuffs to protected themselves and T.J. Maxx patrons. · However, it is equally clear that the Defendant could face significant civil liability if one of its employees were to improperly use the handcuffs. It follows that the Defendant will allow its employees to use handcuffs in certain situations, but must have a strict policy regarding their use. The Defendant has chosen to make termination the penalty for violation of that policy and it is not the province of the court to second-guess that determination. *See e.g. Dister v. Continental Group Inc.*, 859 F.2d 1108, 1116 (2d Cir.1988).

For the purposes of summary judgment, this Court's inquiry should not be whether the punishment imposed by the Defendant was too Draconian, but whether the proffered reason was legitimate and whether it was non-discriminatory. Accordingly, this Court finds that the proffered reason for termination of the Plaintiffs' employment was legitimate and non-discriminatory.[6]

**E. WHETHER THE PLAINTIFFS CAN REBUT THE DEFENDANT'S LEGITIMATE, NON-DISCRIMINATORY EXPLANATION AND SHOW THAT DISCRIMINATION WAS THE TRUE MOTIVATING FACTOR FOR THE TERMINATION DECISION:**

■ This Court has found that for the purposes of this motion for summary judgment, the Plaintiffs have established a prima facie case and the Defendant has proffered a legitimate, non-discriminatory reason for terminating the Plaintiffs. Un-

---

6. Although the Court deems the proffered reason sufficient for the purposes of the current motion, it should be noted that the Defendant's handcuff policy did not mandate termination for a violation—the employer had discretion. Therefore, at trial the issues of (a) whether a violation of the policy occurred; and (b) even if a violation occurred, why the Defendant exercised its discretion to fire the Plaintiffs when it had not done so for at least one other violation of the handcuff policy by a white employee, will have to be addressed.

der the *McDonnell Douglas* analysis this Court must now examine whether that proffered reason is true and whether discrimination was the real reason behind the termination. When conducting that analysis, this Court must take the facts in the light most favorable to the Plaintiff and summary judgment must be denied if there are any genuine issues as to material facts.

When, as in this case, a plaintiff has established a prima facie case of discrimination and that presumption has been successfully rebutted by a defendant's legitimate, nondiscriminatory reason for the decision, the "prima facie presumption" drops from the case and the plaintiff must demonstrate that the defendant's proffered reason was a pretext and that the true reason for the decision was discriminatory. *Hicks* at 507–08, 113 S.Ct. 2742; *Burdine* at 255–56, 101 S.Ct. 1089. The Supreme Court has articulated that "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Hicks* at 515, 113 S.Ct. 2742. Accordingly, in the case at bar, the Plaintiffs must show (1) that the Defendant's proffered reason for firing the Plaintiffs—violation of the handcuff policy—is false and (2) that discrimination was the real reason behind the Plaintiffs' terminations. *See Hicks* at 515, 113 S.Ct. 2742. In the context of summary judgment, the Second Circuit has held that in order to defeat summary judgment, a plaintiff must submit admissible evidence showing circumstances to permit a rational finder of fact to find that the defendant's conduct was motivated in whole or in part by discrimination. *Stern* at 312.

The Plaintiffs argue that the Defendant's proffered reason for the termination is a pretext for discrimination. Specifical-

ly, the Plaintiffs submit that (a) Abreu had a history of discriminatory conduct; (b) Abreu disliked the Plaintiffs because of their national origin and/or race, (c) Abreu was looking for an excuse to terminate the Plaintiffs' employment, (d) the Defendant used this incident as an excuse (that Smith violated the handcuff policy and that Rajcoomar failed to report such violation) as a pretext to terminate the Plaintiffs' employment, and (e) in doing so, the Defendant discriminated against the Plaintiffs on the basis of their national origin and/or race. (Plaintiffs' Opposition, Page 4). In Section III(C) above, several alleged incidents are cited, which if proven to be true could show that discrimination was the real motivation for the termination.

Additionally, while it is not the province of this Court to second-guess the Defendant's decision to make termination a penalty for a violation of the handcuff policy, there is a material question of fact as to why the Defendant exercised such discretion in this case when the Plaintiffs allege that it had not done so in the past. More particularly, the Plaintiffs allege that when a white employee of the Loss Prevention Department violated the handcuff policy in a more egregious manner, he was not terminated or even reprimanded. The Plaintiffs contend that the termination decisions were made for discriminatory reasons; if that is shown to be true the proffered reason would not be legitimate and certainly would not be non-discriminatory. Accordingly, this Court finds that there is a material question of fact regarding whether or not the Defendant's proffered reason was indeed the reason for the Plaintiffs' termination, or whether it was a pretext for discrimination.

It would be reasonable for a jury to conclude, based on the above allegations, that the Defendant and Abreu, a key figure in the termination decisions, have en-

gaged in discriminatory conduct and that such conduct was the reason the Defendant elected to terminate the Plaintiffs. Whether the above allegations or discriminatory conduct are true are questions to be resolved at trial by a jury. They are not questions of law to be resolved by this Court on a motion for summary judgment.

## III. CONCLUSION:

Under Federal Rule of Civil Procedure 56(c), summary judgment is only appropriate when there are no genuine issues as to any material fact. Fed.R.Civ.P. 56(c). This case is not appropriate to be decided on a motion for summary judgment because the Defendant has not shown, as a matter of law, that the Plaintiffs could not satisfy the *McDonnell Douglas* analysis. Additionally, there are numerous material facts that genuinely remain in dispute, including without limitation the following:

— Questions of fact regarding the circumstances of the "handcuffing incident." Did the incident occur at an employer sponsored open house or an informal, social gathering of employees?

— Who was the decision maker with respect to terminating the Plaintiffs, Abreu or Melas? What was the nature and extent of Abreu's role?

— Does Abreu have a history of discrimination?

— Are the allegations of discrimination by the Defendant in general true? If so, can such history be proven by admissible evidence?

— Was Rajcoomar instructed to write a false statement about Smith? Was this the reason he was given a "written consultation" or fired depending on the party's version of the facts?

— Was Rajcoomar actually fired or did he resign?

— Have any other employees of the Defendant engaged in violations of the handcuff policy? If so, were they fired?

— Did Rajcoomar see the incident happen, if so could he have prevented it?

— Was it a part of Rajcoomar's job responsibility to inform his supervisors of the incident, if he did not deem it a violation of the handcuff policy?

— Were the handcuff policy guidelines intended to apply to the situation of a training exercise or demonstration by an employee?

Based upon the foregoing, summary judgment is not appropriate because there are genuine issues regarding numerous, significant material facts. Accordingly, the Defendant is not entitled to judgment as a matter of law and the Defendant's Motion for Summary Judgment is denied.

It is so ordered.