# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1375

**PATRICIA SASSER-FORD**

**VERSUS**

**STATE FARM FIRE & CASUALTY CO., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-4465
HONORABLE RONALD F. WARE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.

**REVERSED AND REMANDED.**

**Allen J. Mitchell, II**
**Mitchell & Blanco, LLC**
**One Lakeshore Drive, Suite 1495**
**Lake Charles, Louisiana 70629**
**(337) 436-8686**
**Counsel forDefendants/Appellees:**
      **State Farm Fire & Casualty Company**
      **Ronnie Johns**

**Brian W. Arabie**
**Arabie Law Firm**
**Post Office Box 3004**
**Lake Charles, Louisiana 70602-3004**
**(337) 493-2000**
**Counsel forPlaintiff/Appellant:**
      **Patricia Sasser-Ford**

**KEATY, Judge.**

Plaintiff appeals from the trial court's granting of summary judgment in favor of Defendant. For the following reasons, we reverse and remand the matter to the trial court for further proceedings.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff, Patricia Sasser-Ford (Sasser-Ford), and Dr. Roy Sasser, Jr. (Dr. Sasser) were married in 1987. Once married, they lived in Sulphur, Louisiana. The Sasser property consisted of a main house located at 3236 Queen Circle and a guest house located at 3235 Castle Drive. Sasser-Ford and Dr. Sasser lived in the main house, and Dr. Sasser's parents lived in the guest house.

The Sasser property was covered by a homeowner's insurance policy with State Farm Fire & Casualty Company (State Farm) since 1984. The original application for coverage was completed by Dr. Sasser on October 30, 1984. A copy of the policy was provided to Dr. Sasser at the inception of coverage. It was noted on this original insurance application that Dr. Sasser was furnishing a guest house to his parents and that there was no remuneration with regard to same.

Dr. Sasser died on January 22, 1997. Following his death, Dr. Sasser's parents continued to reside in the guest house. On August 20, 1997, Sasser-Ford requested that the name on homeowner's policy be changed from Dr. Sasser to hers. At that time, Sasser-Ford was listed as the named insured on the homeowner's policy covering the main house. It is undisputed that she was not provided with a copy of the policy after it was changed to list her as the named insured.

The guest house continued to be used as a home for Sasser-Ford's in-laws until 1998. Shortly after the death of her father-in-law, Sasser-Ford began to rent

out the guest house to various tenants. She consistently rented the guest house from 1998 through September 24, 2005, the date of Hurricane Rita. As a result of Hurricane Rita, a large tree fell onto the guest house causing both exterior and interior damage. Hurricane Rita also damaged the main house.

Sasser-Ford filed a claim under the State Farm homeowner's policy for the damages to the main house and guest house. State Farm paid Sasser-Ford for all damages that were sustained to the main house but denied coverage for the damage sustained to the guest house based on an exclusion in the policy. This exclusion provides that there is no coverage for a dwelling extension that has been rented or held for rental to a person not a tenant of the dwelling.

As a result of the denial of coverage for the damages to the guest house, Sasser-Ford filed the subject lawsuit against State Farm and her insurance agent, Ronnie Johns (Johns). State Farm filed a motion for summary judgment based on the policy exclusion which was subsequently granted by the trial court. That judgment was not appealed and became final. Johns also filed a motion for summary judgment arguing that he did not owe any particular duty to Sasser-Ford; and even assuming that he did, any claim by Sasser-Ford would be perempted as a result of her not having filed suit within three years of the alleged act, omission, or neglect. The trial court denied Johns' motion for summary judgment.

Sasser-Ford's claims against Johns proceeded to trial by jury on December 6 and 7, 2010. At the conclusion of Sasser-Ford's case, defense counsel moved for a directed verdict on the grounds that Sasser-Ford's claim was barred by peremption. The trial court agreed and dismissed all claims against Johns. Sasser-Ford filed a motion for new trial alleging that the trial court erroneously made a credibility determination in granting the directed verdict. Sasser-Ford's motion for new trial

was granted. Johns thereafter applied for a supervisory writ to this court seeking a review of the correctness of the trial court's granting of a new trial. The supervisory writ was denied by this court. *See Patricia-Sasser Ford v. Ronnie Johns*, an unpublished writ bearing docket number 11-1021 (La.App. 3 Cir. 9/9/11).

Johns then applied for a supervisory writ to the Louisiana Supreme Court seeking review of this court's writ denial and the trial court's granting of a new trial. The supreme court granted the writ. The trial court's judgment granting the new trial was vacated and set aside, and the matter was remanded to the trial court with instructions. *Patricia-Sasser Ford v. Ronnie Johns*, 11-2189 (La. 11/23/11), 78 So.3d 749. After a hearing on the motion for new trial, the trial court again granted Sasser-Ford's motion for new trial.

Johns filed another motion for summary judgment asserting that he did not owe a duty to Sasser-Ford under the facts of the subject case. Following a July 17, 2012 hearing, the trial court granted the motion for summary judgment and dismissed all claims against Johns. It is from this ruling that Sasser-Ford appeals.

## DISCUSSION

Sasser-Ford contends that the trial court erred in ruling that where a client gives specific notice to the agent that she is using her property in a way that voids coverage under a policy exclusion, the agent owes no duty to advise his client that the policy he sold to her does not provide coverage for her property.

"Summary judgments are reviewed *de novo* on appeal, with the reviewing court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *La. Safety*

*Ass'n of Timbermen Self-Insurers Fund v. La. Ins. Guar. Ass'n,* 09-23, p. 5 (La. 6/26/09), 17 So.3d 350, 353.

**I.     Applicability of the Louisiana Supreme Court's Holding in *Isidore***

In *Isidore Newman School v. J. Everett Eaves, Inc.,* 09-2161 (La. 7/6/10), 42 So.3d 352, Isidore Newman School (Newman) suffered damage to its physical structure following Hurricane Katrina.  As a result, Newman was closed for over two months and suffered a loss of tuition revenue/income totaling approximately $3,166,606.  Newman filed a suit against their insurance agency and the agency's errors and omissions insurer, alleging that a broker from the agency "was negligent in failing to advise the school that the [Business Income and Extra Expense (BI & EE)] coverage covered income/tuition losses and that amount was not sufficient to cover tuition losses, and in misleading the school into believing that the BI & EE coverage was limited to physical damages to buildings." *Id.* at 354.  The supreme court held the following:

> An agent has a duty of "reasonable diligence" to advise the client, but this duty has not been expanded to include the obligation to advise whether the client has procured the correct amount or type of insurance coverage.  It is the insured's responsibility to request the type of insurance coverage, and the amount of coverage needed.  It is not the agent's obligation to spontaneously or affirmatively identify the scope or the amount of insurance coverage the client needs.  It is also well settled that it is [the] insured's obligation to read the policy when received, since the insured is deemed to know the policy contents.

*Id.* at 359.  The supreme court also stated the following:

> The courts have noted that "the 'advice' that an agent had an affirmative duty to give the insured" involved "aspects of the policies . . . that were not within the knowledge generally held by a lay person," i.e., "the agent's specific knowledge of the insured's individual situation triggered that duty to disclose."

*Id.* at 358 (quoting *Parker v. Lexington Ins. Co.*, 06-4156, p. 3 (E.D. La. 11/15/06), 2006 WL 3328041).[1]

The trial court in the instant matter granted the motion for summary judgment based on *Isidore* and held, in pertinent part:

> But Ms. Sasser-Ford, I think, would have to -- in order to prevail, would have to have had put State Farm on notice that she intended to rent, and because of that, ask for rental coverage. She has to utter those words. She has to make the request for the type of insurance that she would need. That's putting a lot on the insured, but that's what the case law has concluded.

Thus, the trial court read *Isidore* to require Sasser-Ford to specifically ask Johns for rental insurance. The trial court held that once requested, Johns' duty was that he either had to provide the insurance requested or inform Sasser-Ford that he could not provide the requested coverage.

Sasser-Ford alleges *Isidore* is factually distinguishable from the present case. Even if *Isidore* were not so easily distinguished, Sasser-Ford alleges the trial court erroneously applied it in such a way that relegates insurance agents to mere order takers whose duty to provide their clients with the appropriate coverage arises only when the client utters the so called "magic words." Sasser-Ford contends the supreme court's holding in *Isidore* does not relieve agents of their fiduciary duties when their clients fail to make use of the appropriate "magic words."

In opposition, Johns contends the holding in *Isidore* represents the prevailing law in Louisiana addressing the issue of an agent's duty to an insured and that *Isidore* cannot be distinguished from the present case. Johns contends that under Louisiana law, even if he knew that the guest house was being rented, he did not have a duty to recommend or advise Sasser-Ford concerning rental coverage.

---

[1] This case is not reported in F.Supp.2d.

Johns alleges that under the law it was Sasser-Ford's duty to request the types and amount of coverage that she wanted. Upon Sasser-Ford's request, Johns would then have a duty to obtain what was requested or notify the insured if he was not able to do so. Accordingly, Johns contends summary judgment was appropriate.

In the present case, we find that the holding in *Isidore* does not relieve Johns of his fiduciary duty to disclose an exclusion regarding Sasser-Ford's homeowners' policy. As noted by other courts in *Isidore* as discussed above, Johns owed a duty to disclose any exclusion in Sasser-Ford's homeowners' policy if she notified him that she was using her property in a way that voided coverage under her policy. Had Johns notified Sasser-Ford of such exclusion in her homeowners' policy, she could have subsequently requested that Johns procure rental insurance. As such, the issue is whether Johns had specific knowledge of Sasser-Ford's rental property that triggered his duty to advise her about the exclusion in her homeowners' policy.

## II.    Duty/Knowledge

In *Benniefiel v. Zurich American Insurance Co.*, 08-1416, p. 4-5 (La.App. 3 Cir. 5/6/09), 10 So.3d 381, 384-85, this court noted:

> In *Bell v. Gold Rush Casino*, 04-1123, p. 7 (La.App. 3 Cir. 2/2/05), 893 So.2d 969, 973-74, this court set forth the following jurisprudence pertinent to a determination of whether summary judgment is appropriate:
>
> > In *Brittain v. Family Care Services, Inc.*, 34,787, p. 4 (La.App. 2 Cir. 6/20/01), 801 So.2d 457, 460, the court stated:
> >
> > > Even though the summary judgment procedure is favored, it is not a substitute for trial and is often inappropriate for judicial determination of subjective facts such as motive, intent, good faith or knowledge. *Oaks v. Dupuy*, 32,070 (La.App.2d Cir.

6

> 8/18/99), 740 So.2d 263 (*citing Greer v. Dresser Industries, Inc*., 98-129 (La.App. 3d Cir.7/1/98), 715 So.2d 1235). One reason is that these subjective facts call for credibility evaluations and the weighing of testimony and summary judgment is inappropriate for such determinations. *Id*. Moreover, it is not a function of the trial court on a motion for summary judgment to determine or even inquire into the merits of issues raised or to weigh conflicting evidence on the existence of material facts. *See, Harrison v. Parker,* 31,844 (La.App. 2d Cir.5/5/99), 737 So.2d 160.

In the present case, the evidence supporting and opposing the motion for summary judgment included the deposition testimonies of Johns, Sasser-Ford, Barbara Hanks (Hanks), and the trial testimonies and transcript. After our review of this evidence, we believe a genuine issue of material fact exists regarding whether Johns had knowledge of Sasser-Ford's rental property.

Specifically, Sasser-Ford testified[2] that she personally delivered a flyer advertising her property for rental to Hanks, a real estate agent employed by Johns for twenty-three years. Hanks testified[3] as to her duties as a licensed agent. She said that her role as an agent was to make sure that Johns' customers get the right insurance. She testified that State Farm agents undergo annual training on how to assure that they provide their customers with the right insurance. In her role of selecting the right insurance for clients, Hanks admitted that one of her duties was to make sure her client's use of their property does not run afoul of any policy exclusions:

---

[2] Sasser-Ford testified at the December 7, 2010 trial of this matter. At the end of the July 17, 2012 hearing on the instant motion for summary judgment, the trial court made the trial testimony, memorandum, attachments, and exhibits part of the instant record.

[3] Hanks testified at the December 7, 2010 trial of this matter. At the end of the July 17, 2012 hearing on the instant motion for summary judgment, the trial court made the trial testimony, memorandum, attachments, and exhibits part of the instant record.

Q    Would one of the things that you would watch out for in selecting the right kind of insurance is whether or not a client might be using the property in a way that might trigger an exclusion and void the property (sic)?

A    Yes, sir.

Q    So, it's part of your job to watch out and catch those sort of things.

A    Yes, it is.

Q    I think in your deposition you talked about how when somebody buys a new home you make it a point to ask what they're doing with the old home.

A    That is correct.

Q    And why is that?

A    'Cause if that exposure is still there we need to know, because if they're no longer living in the home -- what are you gonna do with it?  Are you gonna rent it?  If you are planning on renting it then we tell the customer we have to convert this to a Rental Dwelling policy because your homeowner's is no longer in force.

Q    So that's something that you're on the watch for.

A    That is correct.

Q    You had a name for that in your deposition.

A    I sure did.

Q    What did you call it?

A    A red flag.

Q    That's a red flag.

A    Yes, sir.

Finally, Hanks admitted that a flyer advertising the property would have been sufficient to put her on notice of the insured's specific situation so as to trigger her duty to advise the client:

Q      Do you ever recall Mrs. Patricia stopping by and dropping off a flyer --

A      No, sir.

Q      If she had done that, that would have been a great, big red flag.

A      Red flag.  Yes, sir.

Q      It would have been the trigger for you to ask or any agent to ask --

A      Correct.

Q      -- more questions about whether or not that was the guest house, whether or not that house was being rented.

A      Yes, that's correct.

Q      Because that would trigger the exclusion?

A      That's correct.

As evidenced by Hanks' own testimony, she and Johns' job was to make sure that Sasser-Ford had the right kind of insurance and this duty included being aware of Sasser-Ford's specific situation so as to make sure that the property was not being used in a way that triggered a policy exclusion.  Further, Hanks testified that the rental flyer was a "red-flag" sufficient to put Hanks on notice that the property was being used in a way that voided the policy.  Hanks' understanding of her duties to the clients of Johns' agency is in agreement with what Sasser-Ford believed to be their job duties.  Sasser-Ford testified that she believed her agent was a professional with expertise in insurance and she relied upon him and his expertise to help her in selecting the type of insurance that she needed.

Both the agent and the insured in this case have shown that it was the agent's duty to make sure that the insured had the right type of insurance coverage that was suited for the specific needs of the insured.  Further, Hanks admits that if they had

9

received the flyer advertising the property for rental, that would have been more than sufficient notice to trigger the agent's duty to advise the client about the policy exclusion. Of course, Hanks disputes Sasser-Fords' testimony that she personally delivered a flyer to her [Hanks] advertising her [Sasser-Ford] property for rental. Thus, a genuine issue of material fact exists as to whether Sasser-Ford delivered a flyer to Hanks regarding the rental property, making this case inappropriate for disposition by summary judgment. The judgment of the trial court is reversed, and this matter is remanded for further proceedings.

## DECREE

The judgment of the trial court is reversed and this matter is remanded to the trial court. All costs of this appeal are assessed against Ronnie Johns.

**REVERSED and REMANDED.**